AFFIDAVIT OF SHEILA M. O'HARA

I, Sheila M. O'Hara, being duly sworn, do state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"). I have been an ATF Special Agent for over 16 years, and during that time I have been involved in numerous investigations of violations of Federal Firearms Laws. I am currently assigned to a group in the Boston Field Division of ATF that, in part, works with other Federal, State and local police departments in and around the Metropolitan Boston area to investigate and prosecute violations of Federal firearms, explosives and controlled substance laws.

2. Based on my training and experience as an ATF Special Agent, I am familiar with Federal firearms laws and know that it is a violation of Title 18, U.S.C., Section 922(g)(1), for a previously convicted felon to possess a firearm and ammunition. I also know that it is a violation of Title 18, U.S.C., Section 924(c), for a person to use or carry a firearm during or in relation to a drug trafficking crime. I also know that it is a violation of Title 21 U.S.C., Section 841(a)(1), for a person to possess narcotics with the intent to distribute them.

3. The facts stated herein are based upon my personal involvement in this investigation and my discussions with other law enforcement officers involved with this investigation. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts, which I believe are sufficient to establish the requisite probable cause.

4. In November of 2003 New Bedford Police Department Detective Shain Ramos ("Detective Ramos") opened an investigation into a

cocaine distribution enterprise after receiving information from a confidential reliable informant ("CI"). The CI is an admitted user of cocaine and is familiar with the methods used to package and prepare this controlled substance for street level sales and is also familiar with the common terminology used when referring to this drug. The CI has proven accurate and reliable in the past by providing information into the operations of numerous lower to upper level drug dealers resulting in the seizure of narcotics, as well as arrests and convictions. The CI advised a New Bedford detective that he regularly purchased cocaine from an individual named Freddy and that Freddy is considered an upper-level dealer who could provide cocaine in bulk. The CI also provided the detective with a list of the cars that Freddy was using to deliver cocaine to the CI. The CI further advised that Freddy was the supplier of cocaine to Gordon Gomes, known in the street as "G," who was known to New Bedford detectives to be a street-level cocaine dealer. The CI did not know where Freddy was residing, however CI did advise detectives that Freddy (later identified as MATOS) could be seen making frequent deliveries of cocaine to Gomes' residence at 111 Park Street in New Bedford. The CI additionally provided detectives with Gomes' telephone number (508-992-4253). Through the use of a pen register, detectives learned that there were approximately 642 phone calls made from 111 Park Street to MATOS' cellular telephone in a one month period. In addition, a New Bedford detective had received information from several different confidential informants that Gomes was selling cocaine out of the 111 Park Street address.

5. After speaking with the CI, Detective Ramos attempted to learn the identity of Freddy. In speaking with Detecive John Encarnacao, Detective Ramos learned that Detective Encarnacao had

started his own investigation into a drug delivery service being operated by an individual using the name Freddy. Detective Encarnacao's investigation revealed that the true identity of Freddy was Jonathan MATOS. Upon learning Freddy's true identity, Detective Ramos showed the CI a photograph of MATOS and the CI identified MATOS as the person he knew as Freddy. During this meeting with the CI, the CI also advised Detective Ramos that MATOS was most recently making cocaine deliveries with another man who MATOS had identified as his uncle. The CI stated that MATOS' uncle used the name "Lucito". According to the CI, MATOS had stated that "Lucito" had recently been released from prison. The CI stated that he believed that Lucito was MATOS' new business associate in the cocaine busines. Further investigation revealed that "Lucito" was Ramon DIAZ. Detectives showed CI a photograph of DIAZ and CI identified the photograph as the person he knew as Lucito. The CI further advised detectives that MATOS had stated that DIAZ had a drug supplier in Providence, Rhode Island.

6. The CI told detectives that when CI wanted cocaine CI would call MATOS on a cellular telephone and order a quantity of cocaine and that MATOS would tell the CI where to meet him. The CI would then meet MATOS at the pre-arranged location, where MATOS would deliver the cocaine.

7. Based on the CI's information, detectives opened an investigation into the reported illegal activities of MATOS and DIAZ. Detectives learned through the Registry of Motor Vehicles ("RMV") that MATOS' address was 342 Hathaway Boulevard, Apartment 35, New Bedford, MA.

8. From December 4, 2004 through February 26, 2004, New Bedford detectives conducted surveillance of the activities of MATOS and

DIAZ. Initially, surveillance was established at Gomes' residence at 111 Park Street in New Bedford. On several occasions both MATOS and DIAZ were seen making brief stops at that address. Both MATOS and DIAZ would enter the residence and then depart within minutes. Moving surveillance would then observe MATOS and DIAZ make several brief stops at locations throughout New Bedford. During these brief stops, MATOS and DIAZ would pull up to an awaiting car. The car's occupant would then get out, approach MATOS' and DIAZ's car, and either get into their car or stand at the driver's or passenger's side window. A brief transaction would then take place. Based on Detective Ramos' training and experience, it was his opinion that this activity was consistent with street-level drug transactions. In addition, this activity was consistent with the way in which MATOS delivered cocaine to the CI during a controlled purchase during the week of January 4, 2004.

9. During the surveillance, detectives also noticed that MATOS and DIAZ made frequent stops at 11 Spruce Street, New Bedford, 38 Ashley Street, New Bedford, and 342 Hathaway Boulevard (MATOS' residence). During the surveillance of 342 Hathaway Boulevard, the vehicles listed in paragraph 10 would be seen parked at the address at different times. On several occasions MATOS and DIAZ were followed from 342 Hathaway Boulevard to either 111 Park Street or 11 Spruce Street. Detectives conducting surveillance then observed MATOS and DIAZ engage in several suspected drug transactions. Detectives then followed them back to 11 Spruce Street.

10. During the course of the surveillance, the detectives noted that MATOS and DIAZ were using several vehicles, only one of which was registered to one of them. Detective Ramos' knew from

4

his training and experience that the use of multiple cars registered to other people was a tactic used by drug dealers to impede investigations. The cars used included: a black Mitsubishi 3000GT bearing Massachusetts registration 89JS40, registered to MATOS; a gold Dodge Intrepid bearing Massachusetts registration 2033WP; a Green Acura 32 TL bearing Massachusetts registration 34MF0, registered to an Angel Quinones; a rented white PT Cruiser bearing Rhode Island registration 89JS40, rented by Angel Quinones; a white Plymouth Voyager bearing Massachusetts registration 24ZX20. In addition to using all of these vehicles, detectives observed that the license plates for these vehicles were routinely switched among all of the vehicles.

11. During the week of January 4, 2004, the CI, under the direction of Detective Ramos, made a controlled purchase of cocaine from MATOS. Prior to the transaction, Detective Ramos searched the CI for narcotics with negative results. Detective Ramos then maintained constant surveillance of the CI before and during the transaction. Prior to the arranged transaction, other surveillance units observed an individual matching MATOS description depart 342 Hathaway in the white Voyager van. This individual went to 11 Spruce Street, where he was observed entering the rear of the building using a key. He stayed a short period of time and then returned to the car. He was followed as he traveled to a series of garages located on County Street in New Bedford. There, he was observed entering one of the stalls with a key. After this brief stop, he was followed and was observed meeting with several other suspected drug customers in the north and west ends of New Bedford. He then arrived to the prearranged meet location and Detective Ramos observed the CI enter MATOS' car for a short time. The CI then departed and

proceeded directly to Detective Ramos' surveillance point, where he handed Detective Ramos the quantity of cocaine which the CI stated he purchased from MATOS. The substance was later field-tested and tested positive for cocaine.

12. On January 26, 2004, the officers set up surveillance at 342 Hathaway Boulevard again. They saw a green Mazda Millenia bearing Massachusetts registration 24ZX20. This is the same registration that had previously been attached to the white Plymouth Voyager. RMV records revealed that the registration had been transferred to the Mazda effective January 23, 2004. It was registered in the name Elliot Cordero. Around this same time, Detective Ramos noticed that the registrations on some of the other vehicles had changed as well. The Plymouth Voyager now had Massachusetts registration number 329WLB attached to it, which had been attached to a Pontiac Sunbird at the time of Detective Encarnacao's previous investigation of MATOS.

13. On February 26, 2004, at approximately 5:00 p.m. the CI called Detective Shain Ramos and told him that he had just purchased cocaine from MATOS out of the green Mazda. This transaction was not authorized by detectives. At approximately 9:30 p.m., detectives located the Mazda in a gas station parking lot at Kings Highway and Church Street. The detectives observed DIAZ get into the driver's seat and MATOS enter the front passenger seat. The detectives followed the car to Cranston, Rhode Island, where it backed into a driveway and MATOS and DIAZ exited the car. Three to four minutes later, MATOS and DIAZ got back into the car and headed back toward Massachusetts. Detectives decided to stop the car in New Bedford based on all of the information known to them, including the fact that the CI had provided information that the drug supplier was in the

Providence, Rhode Island area.

14. At approximately 11:30 p.m., the detectives stopped the car when it entered New Bedford and removed both MATOS and DIAZ from the car and separated them. In plain view in the area of the front passenger seat the detectives saw a large amount of cash, some of which was wrapped in an elastic.

15. Detectives spoke to DIAZ alone after reading him his Miranda Rights. DIAZ told the detectives that he and his friend went for a ride to Fall River to look at a job. He said the car was owned by a friend of his friend's and that the individuals name was Angel. The detectives then spoke with MATOS alone after reading his Miranda Rights. MATOS said that he and his uncle went to RI to pick up some money for a car he was selling. He said that the car belonged to a friend of his named Elliot.

16. Detectives looking inside the vehicle made observations which suggested the vehicle may have a secret compartment for the storage of drugs. Detective Mark Blouin, who received training in the detection of such compartments, noticed that the dashboard in the area of the airbag was scratched and it appeared to be from wear and tear. Detective Blouin knew that it was common for a vehicle with a secret compartment to have such wear and tear from the opening and closing of the compartment. Detective Blouin's observations of the wiring and electronics of the vehicle were also consistent with the presence of a secret compartment. Using four separate electric components of the vehicle in a particular sequence the dashboard lifted up approximately eight inches. This revealed a secret compartment. Inside the compartment was a paper towel with plastic bag inside. The plastic bag contained a white powder substance believed to be cocaine. Also inside the compartment was a fully loaded Rossi,

model M971, .357 caliber, revolver, loaded with 6 rounds of .357 ammunition. Over $4000 in U.S. currency was recovered from MATOS, DIAZ, and the car.

17. The green Mazda operated by MATOS and DIAZ and which contained the cocaine and a loaded revolver on February 26, 2004, was registered to Elliot Cordero, 109 Bullard Street, 2nd floor, New Bedford, MA. On March 19, 2004, detectives interviewed Cordero regarding this vehicle. Cordero advised detectives that in either January or February his friend Jonathan MATOS asked him to register and insure a car for him so that MATOS could save money on insurance. Cordero said that he agreed to do so but that he was never in the car and only saw it on one occasion when MATOS came to his house to pay for the car insurance. Cordero advised that he has known MATOS for approximately six years.

18. The green Acura was registered to Angel Quinones, 41 Scott Street, Apartment 10, New Bedford, MA. I interviewed Quinones on May 19, 2004 and May 27, 2004. Quinones advised me that he went to school with Jonathan MATOS, but that they did not remain close friends. At some point MATOS approached Quinones and asked if he would register and insure a car for him so that he could save money on insurance. Quinones advised MATOS that he had lost his license at some point so his own insurance was already high. MATOS still asked him to register the car anyway and Quinones agreed to do so. Quinones said that he never drove the car, he never sat in it and he did not receive any money from MATOS for registering the car for him. At some point later that winter, Quinones received a call from MATOS saying that he had an accident on the highway in Connecticut and that the Acura was totaled. Quinones said that he handled all of the paperwork for the insurance. MATOS then asked Quinones if he could rent a

replacement vehicle for the totaled Acura. Quinones agreed and said that he met MATOS and another individual Quinones described as "fat" at the car rental agency. Quinones said that all three went into the rental agency, but that the "fat" guy went outside. He said that MATOS gave him some money and he rented a white PT Cruiser for MATOS. He said that he gave MATOS the keys to the rental car. Quinones said that he left in his car, MATOS left in the rented car and, the "fat" guy departed in the car that MATOS and the "fat" guy arrived in (a black two-door car). I showed Quinones photo copies of 2 photo spreads each containing 6 photographs prepared by NBPD OCIB. Quinones correctly identified photograph 4 as the individual he knows as Jonathan MATOS. He identified photograph 5 as the "fat" guy that dropped MATOS off at the car rental agency. Photograph 5 is a picture of Ramon DIAZ.

19. ATF Special Agent Angelo Thurman, Interstate Nexus expert, reviewed reports that described the firearm and ammunition seized by the New Bedford detectives. According to Special Agent Thurman, neither the firearm nor ammunition were manufactured in the Commonwealth of Massachusetts and therefore have previously traveled in interstate commerce.

20. The white powder substance recovered from the hide located in the dashboard of the Mazda weighed approximately 17.30 grams and tested positive for cocaine.

21. I have reviewed the computer printout from the Massachusetts Criminal History Board for Ramon DIAZ, which reflects at least one felony conviction prior to February 26, 2004 for a crime I know to be punishable by a term of imprisonment exceeding one year. DIAZ was convicted of possession of a firearm (2 counts), possession of ammunition, possession with intent to distribute

class C narcotics, and conspiracy to violate the Controlled Substance Act, in Bristol County Superior Court and received a sentence of 4-5 years committed. DIAZ was also convicted of Possession with intent to distribute Class A (Heroin) narcotics (2 counts), trafficking a controlled substance in a school zone (2 counts) and conspiracy to violate the Controlled Substance Act in Bristol County Superior Court and received a sentence of 4-5 years committed.

22. Based on the above, I believe there is probable cause to conclude that on or about February 26, 2004, in New Bedford, Massachusetts, Ramon DIAZ, previously convicted of a crime punishable for a term exceeding one year did unlawfully possess a firearm and ammunition which had traveled in interstate commerce in violation of Title 18, U.S.C., Section 922(g)(1); and that both DIAZ and Jonathan MATOS did use/carry a firearm during or in relation to a drug trafficking crime, in violation of Title 18, U.S.C. Section 924(c); and that both DIAZ and MATOS did possess narcotics with the intent to distribute in violation of Title 21, U.S.C., Section 841(a)(1).

                                      Sheila M. O'Hara
                                      Special Agent
                                      Bureau of Alcohol, Tobacco,
                                      Firearms and Explosives

Subscribed and sworn to before me this twenty-third day of June, 2004.

                                      Charles B. Swartwood
                                      United States Magistrate Judge

# Criminal Case Cover Sheet — U.S. District Court - District of Massachusetts

**Place of Offense:**   **Category No.** II   **Investigating Agency** ATF

City  New Bedford   **Related Case Information:**

County  Bristol   Superseding Ind./Inf. _____   Case No. _____
Same Defendant _____   New Defendant  X
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  Jonathan Matos   Juvenile  ☐ Yes  ☒ No

Alias Name _____

Address  342 Hathaway Boulevard, New Bedford

Birth date: ** ** 83   SS#: *** ** 4309   Sex: M   Race: Hispanic   Nationality: U.S.A.

Defense Counsel if known: _____   Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA  William H. Connolly   Bar Number if applicable  634501

Interpreter:  ☐ Yes  ☒ No   List language and/or dialect: _____

Matter to be SEALED:  ☒ Yes  ☐ No

☒ Warrant Requested   ☐ Regular Process   ☐ In Custody

**Location Status:**

Arrest Date: _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

Charging Document:  ☒ Complaint   ☐ Information   ☐ Indictment

Total # of Counts:  ☐ Petty ___   ☐ Misdemeanor ___   ☒ Felony  2

Continue on Page 2 for Entry of U.S.C. Citations

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: _____   Signature of AUSA: _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy) _____

**Name of Defendant**   Jonathan Matos _____

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 U.S.C. 841(a)(1) | Possession With Intent to Distribute Cocaine | 1 |
| Set 2 | 18 U.S.C. 924(c) | Possess. F/A in Furtherance of Drug Trafficking | 2 |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy) _____

**Name of Defendant**     Jonathan Matos

Matos JS 45.wpd - 3/13/02

Case 1:04-cr-10237-NG     Document 2     Filed 06/23/2004     Page 13 of 13