# United States District Court
# District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>v.   )<br>  )<br>JONATHAN MATOS,   )<br>Defendant,   ) | Criminal Action<br>No. 04-10237 |

# Memorandum in Support of Motion to Suppress

**FACTS:** *FROM THE POLICE PERSPECTIVE*

    In November of 2003 Officer Shawn Ramos of the Organized Crime Investigative Bureau (OCIB) of the New Bedford Police Department began an investigation of the Defendant, Jonathan Matos, who he suspected was an upper level cocaine drug dealer.  Information regarding Matos, was given to him from an anonymous informant, who wishes to remain anonymous for fear of reprisal.  The informant is considered reliable because in 1998 the informant provided information which lead to the conviction of Daniel Morales for drug charges on February 18, 1999.

    The informant provided the police with a list of vehicles used by the defendant, a pager number and the phone number of Gordon Gomes, a person Matos supplies with cocaine.  The informant during the week of January 4, 2004 made a controlled buy from the defendant.  The informant was searched prior to the buy by Officer Ramos, "to the best of his ability," and the buy was made at a prearranged location.

    The New Bedford police engaged in surveillance activity of Matos and co-defendant, Diaz between December 2003 and February 2004.  They saw the defendant and co-defendant operating the following motor vehicles: green Acura, white Plymouth Voyager, gold Dodge Intrepid, Chrysler PT Cruiser, Mitsubishi GT 3000 and a green Mazda.  The vehicles are registered to different owners.  They observed the defendant and co-defendant go to and from the following locations: 1 Spruce Street, 38 Ashley Street, 342 Hathaway Boulevard and a garage on County Street.  The police had the defendant and co-defendant under surveillance thirteen separate occasions between December 4, 2003 and February 23, 2004.  During those dates they observed the defendants meeting people for short periods of time at various locations around New Bedford although no direct observation of the sale of drugs was witnessed.  The police argue that the activity of the defendants was consistent with drug dealing.  The police also contend that the use of multiple vehicles, particularly in the name of different people, is consistent with drug dealing.  Such action is a means to divert and confuse police.  The police did not see the same car going to the various locations on a regular basis.  The use of multiple homes

is also used by a drug dealer to confuse police as to where a dealer might be hiding his "stash" of drugs.

On February 26, 2004 at 5:00 p.m. Officer Ramos received a call from his confidential informant who stated that she had just purchased cocaine from Jonathan Matos out of a green Mazada. Officer Ramos arranged for surveillance on that vehicle. The vehicle was located at 9:30 p.m. in a gas station. The police followed that vehicle. It was operated by Diaz; Matos was a passenger. The vehicle was driven to Cranston, Rhode Island and stopped at a multi-family home. The defendants went into the home for four (4) minutes, returned to the car, drove back to New Bedford. Officer Ramos had information from his informant that Matos was supplied drugs from the Providence area.

Based on the above information Lt. Cordeiro of the New Bedford Police ordered the car stopped. The vehicle was stopped, the defendants removed from the vehicle and the vehicle was searched. A roll of money was in plain view on the dashboard. The police conducted an extensive search of the vehicle which revealed a "hide" or hidden compartment in the dash. The police found a revolver and 17.7 grams of cocaine.

**FACTS:** *FROM THE DEFENDANT'S PERSPECTIVE*

Defendant reserves the right to supplement this memorandum after the hearing on the Motion to Suppress. It is expected that additional facts shall be forthcoming from that hearing.

**ISSUES:**

1. Did the New Bedford Police have probable cause to stop, arrest and search the vehicle in question on February 26, 2004?

2. Did the police have reasonable suspicion to stop and inquire of the defendant?

**LAW:**

*1. Did the New Bedford Police have probable cause to stop, arrest and search the vehicle in question on February 26, 2004?*

It is indisputable in the case at bar that the police officers had neither an arrest nor a search warrant to conduct a search. That being the case, the search is presumed in the first instance to be unreasonable. "The general requirement that a search warrant be obtained is not lightly to be dispensed with, and the burden is on those seeking an exemption from the requirement to show the need for it. <u>United States v. Jeffers</u>, 342 U.S. 48, 51." <u>Antobenedetto</u>, supra at 57, 315 N.E.2d at 534, citing <u>Chimel v. California</u>, 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969). As such, "it is then up to the government to show that a particular search falls within a narrow class of permissible exceptions." The burden is upon the government to prove that the police were justified in stopping or "seizing" the motor vehicle and in conducting a search of the vehicle and its occupants.

The 4th Amendment protects citizens against unreasonable arrests. <u>U.S. vs. Lorenzo</u>

*Funches*, et al. No, 02-2999 (7th Circuit April 29, 2003).  For a warrantless arrest to be reasonable, law enforcement agents must have probable cause, which exists if, given the facts and circumstances within their knowledge at the time of arrest, the agents reasonably believed that the suspect had committed or was committing a crime *Beck vs. Ohio*, 379 US 89, 91 (1964).

In the case at bar the police decided to make an arrest.  They stopped the defendants moving motor vehicle, which per the US Supreme Court is a seizure under the 4th Amendment (*Terry vs. Ohio*, 392 US1 (1968), to arrest the defendant for probable possession of drugs.  This stop cannot be construed as a "Terry" type inquiry or investigative detention based on reasonable suspicion.  The stop was not limited in nature for purpose of a threshold inquiry.  It was an arrest.  It was a stop involving multiple police units.  Both defendants were immediately removed from the vehicle at gun point, separated and read Miranda Rights and questioned by the police.  This police action was an arrest; it required probable cause to make that arrest.  This police conduct can not be construed as a threshold inquiry.

For probable cause to exist in this case the police had to have reason to believe that on February 26, 2004 at 11:30 p.m. there was drugs inside the Mazda Millennium auto then being operated by Ramon Diaz and in which Matos was a passenger.  The police needed enough facts and circumstances to believe that a crime was being committed at the time of the stop.  The following facts established that there was no probable cause:

1.  The police never saw any transaction between the defendant and the alleged informant on February 26, 2004 (the day of the stop).
2.  The police did not obtain the alleged cocaine sold to the informant on February 26, 2004 or anytime thereafter.
3.  The police did not observe the Mazda until 4 ½ hours after the informant allegedly purchased the cocaine.
4.  The police did not know where the Mazda was for those 4 ½ hours.
5.  The police followed the Mazda vehicle to Cranston, Rhode Island.  The police report states that the informant told them that Matos buys his drugs in Providence, Rhode Island.  This statement was made in early January, 2004.  It was never corroborated by the police.
6.  The police did not observe the defendant carry anything into the Cranston home.
7.  The police did not observe the defendants carry anything out of the Cranston home.
8.  The police did not observe furtive movements in the vehicle prior to entering the Cranston home.  (i.e. opening a hide to obtain drugs, money or gun).
9.  The police did not observed furtive movements in the vehicle after the defendants exited the Cranston home and re-entered the vehicle.
10. The vehicle did not commit any moving violations before the stop.
11. Upon stopping the vehicle the police did not smell any odor consistent with illegal drugs.
12. If the police had a canine trained in drug detection; it was not present and did not detect drugs at the time of the stop.
13. There was no evidence of guns in the vehicle or on the person of either defendant prior to the stop or suggested by the informant at any time.
14. The informant did not alert the police that the defendants were traveling to Rhode Island to purchase drugs.

The probable cause for that arrest or search on February 26, 2004 did not occur until after the vehicle was searched and the drugs and handgun were found. The informant told the police that she had made a purchase out of the Mazda 4 ½ hours before the police located the vehicle. The informant did notify the police that the defendants had a large quantity of cocaine or if they were making "drops" around New Bedford. The police witnessed nothing to suggest that drug transactions were taking place and could not confirm that there were drugs in the car. These facts did not provide the police with probable cause to arrest at the time of the stop. Only after a search of the vehicle was there cause to arrest. Without probable cause for an arrest anything seized from the defendant's should be suppressed.

        2.     *Did the police have reasonable suspicion to stop and inquire of the defendant?*

In the event that the government argues that the police had reasonable suspicion, as opposed to probable cause, to stop and inquire, the defendant argues that these facts do not support the reasonable suspicion standard. The Courts have adopted to two prong inquiry for reasonable suspicion, namely, (1) that the officers actions were justified at the inception of the stop and (2) that the action taken was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 US 1, 20, *US v. Taylor,* No. 98-1536 (1st circuit). There was nothing in this case to suggest that the police had reasonable suspicion to stop the defendant's vehicle. No moving violations had occurred and they had no evidence that drugs were in that vehicle. But even if the Court finds the police had facts to support the first prong of the reasonable suspicion analysis, as outlined above, that is justification for the inception of the stop, the police had no justification for the second prong which encompasses the scope of the inquiry. The police action after the stop was not reasonably related in scope to the circumstances justifying the stop. The scope of the stop exceeded a threshold inquiry. There was no inquiry; the stop was an arrest. The manner in which the defendants vehicle was stopped with multiple police units, the fact that they were ordered out of the vehicle and the fact that they were separated and read Miranda rights all suggests that an arrest took place immediately upon stopping the vehicle. The police in this case exceeded the scope of any reasonable suspicion inquiry, violated the principles outlined in *Terry v. Ohio, Supra*, and therefore any evidence seized should be suppressed.

The facts in this case can be compared to *U.S. v. Taylor*, No. 98-1536 (1st Circuit). In *Taylor*, Id a confidential informant called the Springfield police department stating that two black males (described in detail) in a brown Acura with tinted windows (license plate identified) had a large quantity of cocaine and two hand guns and were making "drops" (sales) in and around the Madison Square area of Springfield. Within 45 minutes of the call the vehicle was located in the Madison Square area.

The police converged the vehicle, surrounded it at gunpoint and got the occupants out of the vehicle. The Court permitted this excessive use of force because of safety concerns for the police. But once the police identified there was no weapons they only permitted to conduct a "Terry" type stop (reasonable suspicion). The reasonable suspicion standard reached the level of probable cause during a pat frisk of the motor vehicle for weapons. Then the police smelled an odor of marijuana in the vehicle which provided the justifiable probable to search.

The police in the case at bar never met the reasonable suspicion standard before their inquiry, therefore, their search was not justified. There was no odor of marijuana or weapons of which they were aware, no drops being made in the area, and the vehicle was not found for 4 ½

hours after an anonymous informant's tip.

In *U.S. v. Stevens*, 02-3551 (8th Circuit 11/24/03) an informant told police that Stevens possessed 2 to 3 ounces of methanphetame and a firearm and was staying in room 220 of the Solar Inn. The police began surveillance of room 220 and saw Stevens leave and enter a Ford motor vehicle. A check of Stevens' motor vehicle license revealed it had expired. The police also knew he was not allowed to possess a firearm because of his prior felony record. The stop of his vehicle by the police was justified to check on Stevens' license status. They were justified in asking him to exit the vehicle for their own safety (the informant suggest there was a firearm). The firearm was in plain view which created the necessary probable cause for a further search.

Unlike *Stephens, id,* the police in the case at bar had no reason to stop the vehicle for a license or moving violations. They had no reason to request the defendant to exit the vehicle as there was no evidence that a weapon had ever been used by these defendants. There was no weapon or drugs in plain view upon stopping the vehicle.

**CONCLUSION:**

At the time of the motor vehicle stop the police had no probable cause to believe that there were illegal drugs in the Mazda vehicle operated by Diaz and in which Matos was a passenger. Without cause the police were not permitted to stop and seize the vehicle. Even if the police had a reasonable suspicion to stop, which the defendants do not concede, the police action exceeded a threshold inquiry and instead amounted to an arrest without cause.

Respectfully submitted,
Jonathan Matos
By his Attorney,

/s/ John E. DeVito
John E. DeVito, Esquire
20 Eastbrook Road Suite 304
Dedham, MA  02026
(781) 326-1818

Dated:        September 6, 2005              BBO # 122420