UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 04-10237-NG |
| v. ) | |
| ) | |
| JONATHAN MATOS and ) | |
| RAMON DIAZ ) | |
| ) | |
| ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT JONATHAN MATOS' MOTION TO SEVER**

The United States of America, by and through its attorney, the United States Attorney for the District of Massachusetts, hereby submits its Opposition to Defendant Jonathan Matos' ("Matos") Motion to Sever filed on March 23, 2006. As explained below, this Court should deny the Motion because the defendant has not met his heavy burden of making a strong and specific showing of prejudice warranting severance notwithstanding the substantial benefits and economies of a joint trial.

In support of his Motion, the defendant asserts the following three reasons supporting severance: (1) the co-defendant, Ramon Diaz ("Diaz"), will attempt to implicate Defendant Matos as a narcotics dealer and exonerate himself through the cross-examination of the police officers regarding the sale of drugs by Defendant Matos to a confidential informant, an incident in which the co-defendant was uninvolved; (2) if the co-defendant testifies, he will inculpate the defendant and exculpate himself; and (3) statements made by both defendants to the police explaining where they had been are inconsistent with each other suggesting that the defendants were not truthful about where they had traveled.

The court should deny the defendant's motion because it is not supported by a specific and strong showing of prejudice. First, although Defendant Diaz may point the finger at Defendant Matos as a narcotics dealer, the government's evidence will show that both defendants were narcotics dealers and that Diaz's defense is not mutually antagonistic to Matos' defense. Similarly, any testimony from Diaz's exculpating himself and inculpating Matos does not serve as a mutually antagonistic defense requiring severance. Thirdly, although the defendants each made statements of an incriminating quality, both statements are independently admissible against each defendant as statements of co-conspirators thereby making severance unsuitable in this case.

## FACTS

The government's evidence will show that Defendants Matos and Diaz were involved in a conspiracy to sell narcotics. Each defendant independently, and together, was involved in selling. Specifically, officers will testify that beginning in the fall of 2003 New Bedford Police conducted surveillance of Matos and Diaz. Detective Shain Ramos ("Ramos") observed, on several occasions, Matos and Diaz entering and exiting locations on Park Street, Spruce Street, Ashley Street and Hathaway Boulevard. Ramos would testify that the defendants remained in the locations for very brief periods of time. Additionally, both defendants were also observed making brief stops at several locations while driving throughout New Bedford. During these stops either a third party would approach the drivers side or passenger side window and conduct a brief exchange or the third party would enter the backseat of the car for a short period of time. Finally, the defendants, either separately or together, were observed driving five separate cars during this time frame.

A government witness will testify that the above activity is consistent with drug dealing. Furthermore, that the use of several houses and several cars is frequently employed by dealers in order to impede police investigations.

During the investigation, the New Bedford Police received information from a confidential informant ("CI") regarding Matos and Diaz. During the week of January 4, 2004, the CI bought cocaine from Matos while under surveillance. Diaz was not present during the exchange. The government does not intend to introduce this evidence in its case-in-chief and this buy has not been charged in the indictment.

On January 26, 2004, the CI informed Ramos that earlier in the day they had purchased cocaine from Matos. The CI explained that Matos was driving a green Mazda. Four and one half hours later, police observed Matos and Diaz enter the green Mazda in a parking lot in New Bedford. Diaz entered the drivers side and Matos entered the passenger side. Police followed the car to Rhode Island where they saw both defendants exit the car and enter a residence. Diaz and Matos exited the residence after 3 to 4 minutes and entered the Mazda again, proceeding back in the direction of New Bedford. Once they arrived in New Bedford, police pulled the car over and ordered the defendants out of the car.

Diaz and Matos were separated and interviewed. Subsequent to being advised of their rights per <u>Miranda</u>, Diaz indicated that he and he friend had taken "a ride to Fall River to look at a job." Diaz also said that the vehicle "belonged to a friend's friend and believed his name was Angel."

In contrast, Matos said that "he and his uncle just went to Rhode Island so that he could pick up money for a vehicle he is currently selling." Matos also said that the vehicle "belonged

3

to a friend of his named Elliot and that he uses the vehicle on occasion." In the meanwhile, police observed a large sum of money wrapped in elastic on the front seat of the vehicle. Additionally, secreted in the dash was a compartment containing 18 grams of cocaine and a loaded revolver.

The defendants were indicted on August 11, 2004. In Count One, Matos and Diaz were both charged with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, in Count Two with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and in Count Three with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A). In Count Four, Diaz only was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

## ARGUMENT

The First Circuit has repeatedly endorsed the general rule that "persons who are indicted together should be tried together." United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993) (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)). "Thus when multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice." Id. (citing United States v. Martinez, 922 F.2d 914, 922 (1st Cir. 1991); United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990). "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.

The presumption in favor of joint trials is particularly strong in a conspiracy cases such as this one. See United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994) ("In the context of

conspiracy, severance will rarely, if ever, be required.") (internal quotation marks and citation omitted); <u>United States v. Perkins</u>, 926 F.2d 1271, 1280 (1st Cir. 1991) ("Co-conspirators are customarily tried together absent a strong showing of prejudice.")

A defendant in a multi-defendant conspiracy case can succeed in obtaining a separate trial only by making "a strong and specific showing of prejudice." <u>United States v. Rose</u>, 104 F.3d 1408, 1415 (1st Cir. 1997). "The prejudice shown must be greater than that inherent in trying multiple counts and multiple defendants together." <u>Id</u>. In other words, "[t]o obtain severance, [a defendant] must show actual prejudice resulting from the joinder . . . not merely that he would have a better chance of acquittal it" severance were granted. <u>United States v. L'Allier</u>, 838 F.2d 234, 241 (7th Cir. 1988).

    A.    <u>Defendant Matos has not shown that antagonistic and inconsistent defenses will be asserted at trial by himself and Defendant Diaz mandating severance.</u>

Here, Matos avers that Diaz's anticipated cross-examination of government witnesses regarding the January 26, 2004 CI buy from Matos will implicate Matos as the real drug dealer. In other words, Diaz's defense will be that Matos was the selling narcotics and Diaz was not. Matos also suggests that if Diaz were to testify, Diaz would implicate Matos and exculpate himself.

The law in this circuit is well settled: "antagonistic defenses do not <u>per se</u> require severance, even if the defendants are hostile or attempt to cast blame on each other." <u>United States v. Arruda</u>, 715 F.2d 671, 679 (1st Cir. 1983) (internal quotation marks and citation omitted). "Antagonism of defenses requires severance only where the defenses are so

5

inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of the defendant." Id.

In United States v. Luciano Pacheco, 794 F.2d 7, 8 (1st Cir. 1986), both appellants moved for severance of their joint trial from that of the third co-defendant.  Convicted of possession with intent to distribute 9,724 pounds of marijuana, in violation of 21 U.S.C. § 955a(a), (b) & (f), while on a 55-foot vessel boarded by the Coast Guard 200 miles northwest of Puerto Rico, appellants unsuccessfully testified that they were "innocent bystanders" along for the ride on the boat and that the third co-defendant was the "captain" of the boat.  In contrast the so-called "captain" testified that the appellants were in charge.  In finding insufficient conflict and prejudice to warrant a severance, the First Circuit found that the "need for severance turns on the *degree* of conflict, and the extent to which the antagonism goes beyond mere fingerpointing into the realm of fundamental disagreement over core and basic facts." Lucian Pacheco, 794 U.S. at 9 (emphasis in the original).

To find that the defenses are antagonistic, the Court must find that the belief of one defendant's theory necessarily compels a finding that the other is guilty.  United States v. Anguilo, 897 F.2d 1169, 1195 (1st Cir. 1990).  Diaz's theory that Matos independently sold narcotics to the CI on January 26, 2004, without any aid from Diaz, does not necessarily require the jury to conclude that Matos is alone guilty.  The government's evidence will demonstrate that both defendants were culpable.  Although the jury may believe that Matos alone sold drugs to the CI on that day, it does not follow that the jury will then, consequently, find Matos solely guilty of all the charges and that Diaz was not involved.  In order to find severance, this Court would have to find that the defenses are mutually exclusive.  Here, they are not.

6

This is particularly true where the defendants have been charged in a conspiracy that took place over several months. Evidence will be presented that both defendants, together and separately, were observed entering and exiting various locations, using several different cars and meeting different third parties while in their cars for brief periods of time. In short, the evidence will be that each of the defendants' actions were consistent with drug dealing and that both are culpable, not just one.

> B. Severance is not required where the defendants statements are independently admissible against each declarant as an admission and against each co-defendant <u>as a statement of a co-conspirator.</u>

Here, Matos alleges that the admissibility of Diaz's statement at a joint trial will deprive Matos of his right to confront Diaz and therefore the trials should be severed. However, if the trials were severed and Matos were tried alone, Diaz's statement would still be admissible against Matos at his single trial because it is non-hearsay.

Fed.R.Evid. 801(d)(2)(E) provides:

> A statement is not hearsay if it is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The government must establish the admissibility of a co-conspirator's statement by a preponderance of the evidence. <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-76 (1987). This showing must establish that a conspiracy existed involving both the declarant and the defendant, and that the declarant uttered the statement during and in furtherance of the conspiracy. <u>United States v. Piper</u>, 298 F.3d 47, 52 (1st Cir. 2002). Here, the government will show that the defendants conspired together to sell narcotics through the following. In the months preceding

7

the arrest, both Diaz and Matos were together dealing narcotics. This evidence will entail surveillance of the two of them together, and separately, using numerous cars and stopping at numerous addresses. Evidence will also include observations of both defendants engaged in very brief exchanges with third parties on the street. Finally, the evidence will include the defendant's trip to Rhode Island, the brief visit at a residence, and the ride back to New Bedford culminating in the stop and the defendants' statements.

That the statements were inconsistent with each other and with what the police actually observed suggest that the defendants were attempting to conceal where they had traveled and deter the police investigation, thereby furthering the narcotics conspiracy. In Glenn v. Bartlett, 98 F.3d 721, 729 (2nd Cir. 1996), police stopped defendants for failure to display a rear license plate. After arresting one defendant for impersonation, police asked the other for consent to open a locked suitcase in the car. Although the defendant gave consent, he indicated that he would have to ask the first defendant for the combination. When the officer returned to his car to call for backup, the two defendants jumped in the car and escaped. The Court found that the defendant's statement furthered the conspiracy to transport the drugs ultimately found to have been in the suitcase because the statement was "intended to prevent [the officer] from discovering the drugs in the suitcase by 'buying [the defendants] time,' thus facilitating their escape from this unwanted police attention." Glenn, 98 F.3d at 729.

In United States v. Lim, 984 F.2d 331 (9th Cir. 1993), police targeted two defendants as drug couriers as they exited an airplane. Upon approaching one of the defendants, police asked why he was traveling by himself. In response, he indicated that he was traveling by himself and was visiting friends and family in the area. Affirming the admissibility of the statement as made

8

in furtherance of the drug conspiracy, the Court found that the statement was "an attempt to conceal the conspiracy." Lim, 984 F.2d at 336.

Similarly, Diaz and Matos' statement were made to buy time so that the police would not connect them to what ostensibly appeared to be a stash house in Rhode Island. By giving innocent explanations for their travels, the defendants hoped to deter police from their real intentions of transporting drugs.

    C.    Admissibility of co-conspirator statement will not violate Matos' right to confrontation.

In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held the admission of a co-defendant's confession that implicated the defendant at a joint trial violated the defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment where the co-defendant did not testify. The Court did not rule as to whether any recognized exception to the hearsay rule would raise the same question under the Confrontation Clause. Bruton, 391 U.S. at 129 n.3.

In United States v. Dutton, 400 U.S. 74 (1970), the Supreme Court found that the Confrontation Clause was not violated where a co-conspirators statement was admitted against the defendant. In answering the question that Bruton left open, at least in regard to evidence under Fed.R.Evid. 801(d)(2)(E), the Court explained that co-conspirator statements contain indicia of reliability that have "been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." Dutton, 400 U.S. at 89; see also Grieco v. Meachum, 533 F.2d 713, 716 (severance not applicable where statement

would have been admissible as co-conspirator's statement at defendant's trial had he been tried alone).

If this Court were to sever the trials and Matos were tried alone, Diaz's statement would still be admissible against Matos as a statement of a co-conspirator. No Confrontation Clause issues are implicated where a statement is offered as non-hearsay. Tennessee v. Street, 471 U.S. 409, 414 (1985).

Furthermore, the statements here are not offered for the truth of the matter, but only to show consciousness of guilt. In other words, the statement are not offered to show that, in fact, the defendants traveled to where they said they traveled, but to evidence that each defendant gave different stories as to where they had been and that, at least one of the stories was not consistent with what the police actually observed.

WHEREFORE, the government respectfully requests that this Court deny the Defendant Matos' pending Motion because he has not met his heavy burden of making a strong and specific showing of prejudice warranting severance notwithstanding the substantial benefits and economies of a joint trial.

                            Respectfully submitted,

                            MICHAEL J. SULLIVAN
                            United States Attorney

                  By:   /s/ Kimberly P. West
                            KIMBERLY P. WEST
                            Assistant U.S. Attorney

DATED: April 7, 2006

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                              /s/ Kimberly P. West
                              Kimberly P. West
                              Assistant U.S. Attorney

Dated: April 7, 2006